# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS, )
)  CASE NO. ST-20-CR-235
Plaintiff, )
v. )
)
JABAAR MACTAVIOUS, )
)  2021 VI Super 118U
Defendant. )
)

**KIMBERLY M. RILEY, ESQ.**
Assistant Attorney General
V.I. Department of Justice
34-38 Kronprindsens Gade
St. Thomas, V.I. 00802
*Attorney for the People of the Virgin Islands*

**FREDERICK A. JOHNSON, JR., ESQ.**
Assistant Territorial Public Defender
P.O. Box 6040
St. Thomas, V.I. 00804
*Attorney for the Defendant*

**CARTY, RENÉE GUMBS**, Judge

## MEMORANDUM OPINION

¶1    **BEFORE THIS COURT** is Defendant's motion to suppress filed on August 27, 2021. The People of the Virgin Islands (the "People") filed their opposition on September 2, 2021, and a suppression hearing was held on September 20, 2021, via Zoom. The People were represented by Assistant Attorney General Kimberly M. Riley, Esquire. Jabaar Mactavious ("Defendant" or "Mactavious"), was present and represented by Territorial Public Defender Frederick A. Johnson, Jr., Esquire. Defendant's motion seeks to suppress the out-of-court identification made by the witness and any in-court identification the witness may make because a double-blind photo array should have been administered, and a single-blind photo array is inherently suggestive.[1]

---

[1] Double-blind is an adjective that can modify any procedure, interaction, or experiment that may take place between two parties when both parties are "blind"—that is without knowledge—about some aspect of the interaction. In this

¶2    The Court heard the sworn testimony of the sole testifier, Virgin Islands Police Detective Nigel James ("Detective James"). The photo array used by law enforcement was identified and admitted into evidence, to which Defendant had no objection for the purpose of the suppression hearing. The Court also heard the parties' closing arguments. Based on the evidence adduced at the hearing, the Court does not find the pre-trial identification procedure used by Detective James impermissibly or unduly suggestive. Further, even analyzing the totality of the circumstances, the Court arrives to the same conclusion: there was no substantial likelihood of misidentification. Therefore, this Court will **deny** Defendant Mactavious' motion.

## I.    FACTUAL BACKGROUND

¶3    In the early morning of April 16, 2020, Jabaar "Juba" Mactavious played dominoes at, or near, 173-308 Estate Tutu Valley, St. Thomas, Virgin Islands, when he noticed Shaq'kil Roberts ("Roberts") nearby eating pizza. Mactavious left the domino table to confront Roberts. A verbal altercation transpired and Mactavious slapped Roberts' pizza onto the ground. Subsequently, Roberts walked towards the table where Defendant and witnesses played dominoes, and Mactavious went to his vehicle. Upon Mactavious' return to the table, he revealed a firearm and shot Roberts multiple times, killing him. That evening, Mactavious went to the police station to turn himself in. However, after speaking with officers, the police collected "under-clothes and shoes" from Defendant for the major crimes unit to inspect and subsequently released Mactavious.

context, double-blind refers to a law enforcement procedure, such as a lineup or photo array, where the administrator does not know which lineup member or photograph in an array is the suspect and neither does the witness. Single-blind refers to a law enforcement procedure where the administrator knows which individual or image is the suspect but the witness does not. *See generally,* Margaret Bull Kovera & Andrew J. Evelo, *The Case for Double-Blind Lineup Administration,* 23, PSYCH. PUB. POL. AND L., 421, 422 (2017) (discussing single-blind and double-blind procedures in the context of a lineup).

2

The following day, Defendant fled St. Thomas to Miami, Florida. Two months later on June 17, 2020, Mactavious was arrested in Durham County, North Carolina, and eventually transported back to the Virgin Islands on August 14, 2020.

¶4       On September 3, 2020, the People charged Mactavious with ten (10) felony charges consisting of: murder in the first degree; use of a firearm during the commission of murder in the first degree; murder in the second degree; use of a firearm during the commission of murder in the second degree; assault in the first degree; use of a firearm during the commission of an assault in the first degree; assault in the third degree; use of a firearm during the commission of an assault in the third degree; reckless endangerment in the first degree; and unauthorized possession of ammunition. A suppression hearing regarding a witness' identification of Defendant from a photo array was held on September 20, 2021.

¶5       Detective James, an experienced detective for approximately six (6) years, testified he was the lead investigator. He obtained a photograph of Mactavious from another witness. As part of the general practice of a criminal investigation, Officer Vernon Carr of the forensic unit compiled six (6) photographs to create a photo array to present to Detective James. Detective James also testified the photo array was not in a sealed envelope or covered in any way and he was able to see all six (6) images in the array.

¶6       Detective James interviewed two witnesses present during the homicide, but only one of the witnesses out-of-court identification of Defendant is challenged here. Detective James testified he and Detective Cherese Thomas ("Detective Thomas") of the juvenile division met with the witness in the Four Winds Plaza parking lot approximately two weeks after the incident. Detective Thomas was not assigned to the case but was present to gain experience in homicide investigations. The witness sat in the back seat of the unmarked police vehicle. Detective James further testified

3

he handed the photo array of six images to the witness and asked him "if he recognized anyone in the photo array." This witness knew Defendant prior to the homicide for approximately five to ten (5-10) years. The witness "immediately and without hesitation" identified the person in photo number three, the top right photo, as "Juba," Defendant's nickname. The witness circled, signed, and dated the photograph demonstrating confidence in his selection. There was no video taken for the administration of this photo array.

¶7    Defendant asks this Court to suppress this photo array—the witness' out-of-court identification—and any potential in-court identification of Mactavious at trial. For the following reasons, this Court will not suppress the out-of-court identification and the witness will be allowed to make an in-court identification at trial.

## II.    LEGAL DISCUSSION

¶8    Defendant argues the photo array was impermissibly suggestive because the circumstances surrounding the identification were not conducted through a double-blinded administration of the photo array. In other words, because Detective James received the photo array after he obtained Mactavious' photograph sent to him by the other witness, he knew the position of Defendant in the photo array and should not have administered the array. Accordingly, Detective James may have, consciously or subconsciously, administered the array in a suggestive manner by phrasing the question asked to the witness in a suggestive way, or demonstrate via body language whether the witness identified the correct suspect. Defendant argues the array should have been administered by someone unfamiliar with the case to avoid any conscious or subconscious suggestive behavior and such administration should have been video-recorded.

4

¶9      In support of this argument, Defendant posits the U.S. Attorney General's memorandum published January 6, 2017, to aid law enforcement conduct out-of-court identifications mandates this Court to enforce such practices. Defendant insists the memorandum "should be considered by this court as authoritative on conducting a non-suggestive photo array." By not following the guidelines from the memorandum, the method used by law enforcement here was inherently suggestive. Alternatively, if the memorandum is not binding, Defendant argues the procedures used by the VIPD should be changed to a mandatory double-blind procedure whenever administering a photo array as a matter of policy.

¶10     The People highlight the lack of evidence indicating law enforcement intentionally or unintentionally acted in an impermissibly suggestive manner. Furthermore, the VIPD does not mandate the double-blind administration of arrays and Detective James did not violate any procedures when administering the photo array to the witness. The People also argue the fact that the administration was not memorialized in video goes to the weight, not the admissibility, of the evidence. Therefore, the People ask this Court to deny Defendant's motion.

###      A.      Standard for Analyzing Motion to Suppress a Photo Array.

¶11     A pre-trial identification procedure violates constitutional due process if the procedure is so unnecessarily suggestive as to create a substantial likelihood of irreparable misidentification. *Garcia v. Government of the Virgin Islands*, 48 V.I. 530, 536 (D.V.I. App. Div. 2006) (citing *Neil v. Biggers*, 409 U.S. 188, 196-99 (1972)). Courts employ a two-part test to determine whether an identification procedure violates constitutional due process. *Richards v. People*, 53 V.I. 379, 387 (V.I. 2010). First, the court must determine whether the identification procedure was unnecessarily suggestive. *Richards*, at 387. If the procedure was not unnecessarily suggestive, the inquiry ends

there. However, if it was unnecessarily suggestive, the court then decides whether the identification that occurred was reliable despite the suggestive procedure. *Id.*

¶12    To determine reliability, "the [c]ourt considers the totality of the circumstances to determine whether it was so suggestive as to give rise to a substantial likelihood of misidentification." *Potter v. People of the V.I.*, 56 V.I. 779, 789 (V.I. 2012). When evaluating the totality of the circumstances, courts consider factors such as: (1.) the opportunity of the witness to view the criminal at the time of the crime; (2.) the witness' degree of attention; (3.) the accuracy of the witness' prior description of the criminal; (4.) the level of certainty demonstrated by the witness at the [identification]; (5.) and the length of time between the crime and the [identification]. *People of the V.I. v. Boyce*, No. SX-13-CR-092, 2014 V.I. LEXIS 84, at *4-5 (Super. Ct. Oct. 6, 2014) (quoting *Biggers*, at 199-200).

## B.    The Pre-Trial Identification Procedure was Not Impermissibly Suggestive.

¶13    Defendant argues the procedure was inherently tainted because the photo array was not administered in a double-blind fashion. Defendant argues the pre-trial identification procedure could not have been conducted in a nonbiased manner because Detective James knew Mactavious was the primary suspect when administering the photo array to the witness. Consequently, Defendant asserts Detective James may have acted in a manner that persuaded the witness to select the suspect known by Detective James. This may have occurred consciously or subconsciously, through body language or verbal cues which ultimately skews the reliability of the out-of-court identification.  The alternative proposition as Defendant argued required Detective Thomas, who was unfamiliar with Mactavious, to have administered the photo array. The People argue there is nothing in the record to show any suggestiveness nor is evidence provided showing law enforcement intentionally or unintentionally impacted the witness' selection from the photo array.

Any disputes Defendant has about such evidence can be addressed during the cross-examination of the witness at trial.

¶14    Courts hold the circumstances surrounding the out-of-court identification may not be impermissibly suggestive when a photo array is administered by law enforcement in a single-blind or nonblind manner to a witness who identifies a criminal defendant. *See generally*, Ann K. Wooster, Annotation, *Manner in which Photographic Array Shown by Police to Witness Is Displayed, or Police Officer's Alleged Nonverbal Cues, as Factor in Determination of Whether Circumstances of Witness's Identification of Criminal Defendant, as Person in Photograph within Array, Were Impermissibly Suggestive as Matter of Federal Constitutional Law*, 8 A. L. R. 7th Art. 5 (2016). State and federal jurisdictions together examined circumstances where law enforcement employed a single-blind technique and determined the technique does not violate constitutional law. The First Circuit affirmed where a witness has prior familiarity with the suspect, no amount of police suggestion is likely to influence the witness' identification. *United States v. Veloz*, 109 F. Supp. 3d 305, 312 (D. Mass. 2015), *aff'd*, 948 F.3d 418 (1st Cir. 2020). The Sixth Circuit held there is no authority that single-blind photo arrays conducted by law enforcement are *per se* impermissibly suggestive. *United States v. Starnes*, 552 F. App'x 520 (6th Cir. 2014). The Eighth Circuit asserted there is no requirement that pre-trial identification procedures conducted by law enforcement be administered by officials who are independent from the investigation in order to avoid impermissible suggestiveness. *U.S. v. Boston*, 494 F.3d 660 (8th Cir. 2007).

¶15    Similarly, the Northern District of Georgia rejected an argument that photo arrays administered in a non-double-blind manner is automatically suggestive. *United States v. Steele*, No. 1:14-CR-0147-WBH, 2015 WL 5089611, at *5 (N.D. Ga. Aug. 27, 2015). States such as California, Connecticut, Massachusetts, Minnesota, New Jersey and Ohio all concur there is

nothing inherently suggestive about administering a single-blind photo-array. *See People v. Lucas*, 60 Cal. 4th 153, 177 Cal. Rptr. 3d 378, 333 P.3d 587 (2014); *People v. Armstrong*, 2014 WL 1778914 (Cal. App. 1st Dist. 2014); *State v. Johnson*, 149 Conn. App. 816, 89 A.3d 983 (2014); *Com. v. Silva-Santiago*, 453 Mass. 782, 906 N.E.2d 299 (2009); *State v. Richmond*, 2013 WL 1942995 (Minn. Ct. App. 2013); *State v. Scott*, 2013 WL 4052654 (N.J. Super. Ct. App. Div. 2013); *State v. Simpson*, 2013-Ohio-1696, 2013 WL 1798404.

¶16    In the case *sub judice*, the witness knew Mactavious for five to ten (5-10) years prior to the incident and was present at the time of the incident. The photo array administered in a non-blind manner is not *per se* suggestive in this jurisdiction. The VIPD adheres to similar principles articulated in the memorandum Defendant puts forth and policies adopted by other jurisdictions. The VIPD uses photo arrays compiled by the forensic unit, where they select photographs of individuals with similarities in facial features, hair styles, complexion, color of clothing, lighting, etc. Jurisdictions across the United States and U.S. territories justify non-blind administration of photo arrays are not unnecessarily or unduly suggestive *per se*.

¶17    Here, the administration of the photo array was rendered unbiased, unsuggestive, and the detective asked the witness to select the suspect by circling, initialing, and dating the photo. This procedure is not dissimilar to other jurisdictions. There is nothing in the record to suggest that Detective James performed any suggestive conduct when administering the photo array to the witness. The fact that Detective James tendered an unsealed photo array has no bearing on the witness' prompt identification of Defendant, whom he knew for years and was present at the incident. Additionally, the recording would not have changed the suggestiveness of the administration of the photo array. As the People argued, the lack of video recording goes not to the admissibility but to the weight jurors choose to place on such evidence. In sum, Defendant has

not set forth a single fact to support this argument that Detective James' conduct, words, or tone, suggested the selection of Mactavious. Combining this with the immediacy of the witness' out-of-court identification, this Court concludes there was not a likelihood of irreparable misidentification, much less a substantial one.

### C. The U.S. Department of Justice's Memorandum Does Not Bind This Court.

¶18 Defendant also argues the memorandum from the U.S. Attorney General's office should be "considered by this court as authoritative on conducting a non-suggestive photo-array." Defendant further posits the VIPD should adopt the double-blinded administration procedures articulated in the memorandum because single-blinded administrations are inherently suggestive. The Court dismisses this argument.

¶19 The memorandum explicitly states, "nothing in this memorandum implies that an identification not done in accordance with these procedures is unreliable or inadmissible in court." Sally Q. Yates, U.S. DEP'T OF JUSTICE, OFFICE OF THE DEPUTY ATTORNEY GEN., MEMORANDUM ON EYEWITNESS IDENTIFICATION: PROCEDURES FOR CONDUCTING PHOTO ARRAYS, (Jan. 6, 2017). The memorandum further states, "this document is not intended to create, does not create, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nothing in these procedures implies that an identification not done in accordance with them is unreliable or inadmissible in court." *Id.* The memorandum is clear: in essence, recommendations from this memorandum may not be used as evidence against the People, or Government, and does not detract against the reliability of methods used by law enforcement agencies.

¶20 The Court is mindful of its role in our tripartite system of government and the separation of powers that applies to all branches of government in the Virgin Islands. *Gumbs v. Schneider*

*Reg'l Med. Ctr.*, 73 V.I. 358 (Super. Ct. 2020); *Smith v. Magras*, 124 F.3d 457, 465 (3d Cir. 1997). The Court interprets the law and does not set or suggest policies to any agency of the other branches of government. Thus, this Court will not suggest what policy or policies the VIPD should adopt regarding the administration of a photo array, rather, only determine whether such policies are unduly suggestive.

¶21    The same argument was made and examined in *United States v. Matthias*, No. CR 2016-0025, 2017 WL 2434458 (D.V.I. June 5, 2017). As with this case, Matthias argued, "the failure to follow the DOJ-sanctioned procedures renders the identification procedure impermissibly suggestive *per se*." *Id.* at *3. In response, the District Court of the Virgin Islands cited the direct language from the memorandum and reasoned there was no testimony suggesting the detectives administering the photo array engaged in any suggestive behavior. Similar to the case at hand, the witness identified the defendant instantly and was "very confident in his selection." *Id.* at *5. The District Court of the Virgin Islands concluded the Virgin Islands Police Department's failure to incorporate any practices recommended by the federal government did not render the conduct as unduly suggestive *per se*. *Id.* at *6.

¶22    Defendant does not challenge the construction of the photo array, but the manner in which it was administered, by insisting a detective unrelated to the case should have administered the photo array. Yet, this does not inherently make the administration more reliable than a single-blind administration. Even if Detective Thomas administered the photo array, Defendant cannot escape from the fact the witness knew Mactavious for many years and was actually present at the time of the shooting. Here, as with *Matthias*, law enforcement had no opportunity to taint the pre-trial identification process. The witness' familiarity of Mactavious contributed to the identification of

him in the photo array. Therefore, there is nothing to suggest the out-of-court identification procedure administered by Detective James was unduly suggestive.

### D. Even if the Pre-Trial Procedure was Impermissibly or Unduly Suggestive, the Totality of the Circumstances Does Not Suggest a Substantial Likelihood of Misidentification.

¶23 The Court need not inquire as to the reliability of the witnesses identification because the array and its presentation was not unduly suggestive. However, even if the Court analyzed the totality of the circumstances, the identification would still be permissible. As provided *supra*, courts consider the opportunity of the witness to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the suspect, the level of certainty demonstrated by the witness when identifying the suspect, and the length of time between the crime and the identification of the suspect. *See People of the V.I. v. Frett*, No. ST-18-CR-208, 2019 V.I. LEXIS 119, at *7 (Super. Ct. Oct. 18, 2019) (quoting *Biggers*, at 199-200).

¶24 The witness observed, firsthand, Defendant confront and shoot Roberts. The witness also reported a detailed account of the incident that matched the description from another witness. The witness provided accurate details in the description of Mactavious. Furthermore, the witness identified Defendant from the photo array immediately and signed and dated the photo array to demonstrate their confidence. None of these factors suggest a substantial likelihood of misidentification.

¶25 One factor that does favor Defendant is the length of time between the crime and the identification. Detective James administered the photo array approximately thirteen (13) days after the incident. However, the fact that the witness knew Mactavious for years diminishes this factor in favor of Defendant. Nevertheless, even when considering the totality of the circumstances, it favors the reliability of the witness' identification.

11

## III. CONCLUSION

¶26    In conclusion, the Court does not believe the pre-trial identification procedure utilized by

Detective James was impermissibly or unduly suggestive. This Court finds the pre-trial

identification procedure employed to be sufficient and proper. Considering the totality of the

circumstances, although not required, there has been no substantial likelihood of misidentification.

The Court finds there was untainted identification of Defendant. Therefore, the Court will deny

Defendant Jabaar Mactavious' motion to suppress. An appropriate order follows.

Dated: December _10_, 2021

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor  12/13/2021

CERTIFIED TO BE A TRUE COPY
This 13th day of ___ 2024
TAMARA CHARLES
CLERK OF THE COURT
By _____ Court Clerk

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,                )
                                             )
                    Plaintiff,               )
                                             )
            v.                               )        CASE NO. ST-20-CR-235
                                             )
JABAAR MACTAVIOUS,                           )
                                             )        2021 VI Super 118U
                    Defendant.               )
_____    )

## ORDER

**THIS MATTER** came before the Court on September 20, 2021, for a suppression hearing, via Zoom. Defendant filed his motion to suppress on August 27, 2021. The People of the Virgin Islands (the "People") filed their opposition on September 2, 2021. Based on the representations made by counsel and for the reasons set forth on the record, it is hereby

**ORDERED** that Defendant's motion to suppress is **DENIED**; and it is further

**ORDERED** that the final **pre-trial conference** shall come on **Monday, April 25, 2022,** at **9:30 a.m.**; and it is further

**ORDERED** that **jury selection** is scheduled on **Monday, May 23, 2022,** at **9:00 a.m.** with **trial** to commence sometime during the one (1) week period; and it is further

**ORDERED** that a copy of this Order shall be distributed to Assistant Attorney General Kimberly M. Riley, Esquire and Territorial Public Defender Frederick A. Johnson, Jr., Esquire.

Dated: December _10_, 2021

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor _12/13/2021_

CERTIFIED TO BE A TRUE COPY
This 13th day of Dec. 2021
TAMARA CHARLES
CLERK OF THE COURT
By _____ Court Clerk