IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

January 27, 2022 02:04 PM
ST-2020-CR-00003
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,      )
                                      )
            Plaintiff,            )       CASE NO. ST-2020-CR-00003
     vs.                       )
                                      )
SHEKIL JAMAC BERTHIER,       )
                                      )
           Defendant.         )
_____ )

2022 VI Super U11

## <u>MEMORANDUM OPINION</u>

¶1      **THIS MATTER** is before the Court on Defendant's Motion to Suppress, filed September 24, 2021.[1]

¶2      This motion to suppress came on for hearing on October 20, 2021. The People of the Virgin Islands ("the "People") were represented by Assistant Attorney General Nadja D. Harrigan. Case manager, Detective Tamika Beazer, also appeared, seated at the People's counsel table. Defendant Shekil Berthier appeared and was represented by Adam G. Christian, Esq. Defendant Berthier seeks to suppress the out-of-court and in-court identifications of Berthier.

¶3      Defendant Shekil Berthier was arrested on January 3, 2020 and is charged with third degree assault, in violation of 14 V.I.C. § 297(a)(2); unauthorized possession of a firearm during the commission of a third degree assault, in violation

---

[1] The motion is fully briefed. The People filed an opposition on October 13, 2021, and the defendant filed a reply on October 19, 2021.

of 14 V.I.C. § 2253(a); reckless endangerment in the first degree, in violation of 14 V.I.C. § 625(a); and unauthorized possession of firearm ammunition, in violation of 14 V.I.C. § 2256(a).

¶4 Berthier argues that the identification made by the victim, Renaldo Penn, was the product of unnecessarily suggestive procedures by the Virgin Islands Police Department ("VIPD"), in violation of his Fourteenth Amendment due process rights. The People argue that the procedures used in construction of the photo array and its subsequent presentation to Mr. Penn satisfied the relevant legal standard. For the reasons set forth herein, the motion will be denied.

## BACKGROUND AND PROCEDURAL POSTURE

¶5 At the suppression hearing, the People called three witnesses: VIPD Detective Cherese Thomas, VIPD Crime Scene Technician ("CST") Debra Mahoney, and VIPD Detective Tamika Beazer. The Defendant did not call any witnesses.

¶6 The parties agreed by stipulation to admit the following exhibits: People's Exhibit M1, Renaldo Penn's statement to VIPD, dated October 16, 2019; People's Exhibit M2, a driver's license search conducted on Berthier through the Bureau of Motor Vehicles ("BMV"); People's Exhibit M3, a supplement report for the photo array and a copy of the photo array with Berthier's photo included; People's Exhibit M4, a copy of the photo array with Berthier's photo circled and including Renaldo Penn's signature, dated December 23, 2019 at 9:20am; Defendant's Exhibit M1, Renaldo Penn's statement to VIPD, dated October 16, 2019; Defendant's Exhibit M2, the photo

array with Berthier's picture circled and including Renaldo Penn's signature, dated December 23, 2019 at 9:20am; and Defendant's Exhibit M3, a driver's license search conducted on Berthier.

¶7    During the hearing, the Court also admitted Defendant's Exhibit M4, a table detailing the times of sunsets and sunrises in St. Thomas, Virgin Islands in October 2019 from timeanddate.com, only to be used as general information for the approximate time of the sunrise and sunset during the month of October 2019. The Court also admitted Defendant's Exhibit M5, U.S. Department of Justice Office of the Deputy Attorney General Memorandum, Eyewitness Identification: Procedures for Conducting Photo Arrays[2] ("DOJ Memorandum"), from January 2017. The Court admitted Defendant's M5 with reservations: the exhibit will only be used to inform the Court that the federal government had a standard for conducting photo arrays, in 2017.

¶8    Berthier argues that VIPD lacks a process for constructing and presenting photo arrays, and that the construction and later presentation of the photo array in this case were unnecessarily suggestive. Therefore, Berthier argues, Mr. Penn's out-of-court identification and all future identifications by Mr. Penn must be suppressed as a violation of Berthier's Fourteenth Amendment due process rights. The People counter that the photo array and its presentation met the two-prong test requiring (1) identification not be unnecessarily suggestive and (2) that the identification was

---

[2] Sally Q. Yates, U.S. DEP'T OF JUSTICE, OFFICE OF THE DEPUTY ATTORNEY GEN., MEMORANDUM ON EYEWITNESS IDENTIFICATION: PROCEDURES FOR CONDUCTING PHOTO ARRAYS (Jan. 6, 2017).

reliable, because the officer who constructed the array selected photos of persons with similar physical characteristics to the defendant, and Mr. Penn was familiar with the defendant prior to the incident. The People therefore argue that the motion to suppress should be denied.

### FACTS

¶9     On October 16, 2019, Detective Thomas, who has been a law enforcement officer with VIPD for twenty-two (22) years and was then assigned to the Juvenile Bureau,[3]  took a statement from Mr. Penn regarding an incident that had just occurred. Mr. Penn stated that sometime after 7:00PM on October 16, 2019, he was attempting to park near his residence, but another vehicle was blocking his way. A young man was standing outside the vehicle and the driver was in the vehicle. Mr. Penn asked them to move the vehicle, but they did not. Mr. Penn got out of his vehicle, and the young man standing outside the vehicle left, entered a residence, brought out a rifle, and thereafter fired one shot at Mr. Penn, who was standing in front of his truck. The shot hit Mr. Penn's truck on the driver's side windshield. Mr. Penn described the shooter as "young" (in his teens to early twenties), "slim", and "red skin", with braids. Mr. Penn did not know the young man's name or where he lived, but said he was familiar with the young man, who he had seen around the

---

[3] By the time of the suppression hearing, Detective Thomas was assigned to the VIPD Major Crimes Unit.

neighborhood, because the young man's uncle lived nearby. Mr. Penn also stated that he believed the young man's name was "Shekil".

¶10    Detective Thomas testified that she arrived on the scene fifteen (15) minutes after the incident occurred. Her report reflects a time and date of 7:50pm on October 16, 2019.[4] She testified that the incident occurred on an estate road, and she could not remember whether there were streetlights on the road. However, Detective Thomas testified that there was light emanating from the surrounding residences. She testified that Mr. Penn's truck was approximately fifteen (15) to twenty (20) feet away from the nearest residence.

¶11    After Detective Thomas took Mr. Penn's statement, she took steps to identify the young man. She determined that Shekil Berthier attended Ivanna Eudora Kean High School and was employed as a driver for Paradise Gas Company. So, she believed he must hold a valid Virgin Islands driver's license. She investigated his license at the BMV and confirmed he had a valid driver's license. Detective Thomas then obtained Berthier's photograph from the BMV and added it to the case file to be used in a photo array. Detective Thomas asked the forensics unit to prepare a photo array. Ultimately, the case was turned over to Detective Beazer, who also asked the forensics unit to prepare a photo array. CST Debra Mahoney prepared the photo array.

---

[4] It is unclear if the time listed on the report is when Detective Thomas arrived on the scene, when she began the report, or completed it.

¶12    CST Mahoney has been with VIPD for twenty-two (22) years and has been assigned to the forensics unit for her entire tenure. She testified that she had no information about who would view the photo array she constructed for this matter. She received Berthier's photo from Detective Beazer. To build the array, CST Mahoney searched the BMV's system for photos of individuals who had similar characteristics to Berthier, i.e., young men with earrings, light complexions, and a braided hairstyle of cornrows or plats with the braids "sticking up" (although she could not find any photos of persons with their braids sticking up). She also considered the shapes of persons' noses in selecting photos for the array. To find the photos through the BMV, CST Mahoney testified that she had to enter random names into the system. In total, it took her about an hour to build the photo array. CST Mahoney created a single photo array for this matter.

¶13    Detective Tamika Beazer has been with VIPD for six (6) years. At the time of the facts giving rise hereto, in 2019, she was assigned to the VIPD Criminal Investigation Bureau.[5] Detective Beazer was the detective assigned to handle the incident reported by Renaldo Penn. She requested a photo array to present to the victim. On December 23, 2019, Detective Beazer, along with her colleague, Detective Jamaal Fleming, presented Mr. Penn with a physical, color copy of the photo array. Detective Beazer testified that she had seen the photo array prior to presenting it to Mr. Penn, but she had had no hand in the preparation of the array. When she

---

[5] At the time of the suppression hearing, Detective Beazer was assigned to the High Intensity Drug Trafficking Areas (HIDTA) Task Force.

presented the array to Mr. Penn, Detective Beazer told him to "choose the person who shot at you." Within two seconds, Mr. Penn selected Berthier, circled the photograph of Berthier, and signed and dated the copy of the photo array. Detective Beazer testified that Mr. Penn looked at the photo array and immediately selected Berthier. Detectives Beazer and Fleming were with Mr. Penn for no more than one or two minutes because his identification of Berthier was very quick. The interaction with Mr. Penn was not recorded by audio or video, and neither Detective Beazer nor Detective Fleming took notes to document the interaction.

¶14    Detective Thomas testified that VIPD has a standard operating procedure manual that addresses the ways victims may identify a suspect. She said the manual specifically addresses photo arrays, and that the manual was last updated in the 1980s. Detective Beazer testified that she is not aware of any written procedure for creating or presenting photo arrays, and she is not aware of the 1980s manual that Detective Thomas mentioned. Detective Beazer testified the training process is hands-on, conducted only by learning from other detectives. She said the procedure is as follows: VIPD shows the witness a photo array, the witness selects a photo, and then the witness signs, dates, and notes the time of their selection on the copy of the photo array, but that VIPD does not tell the witness who to identify nor does VIPD pressure the witness to make a selection. CST Mahoney testified that she is not aware of any written procedures for constructing or presenting a photo array and she did not follow any written procedures when she created the photo array in this case. CST Mahoney testified that she never received any formal training for how to build photo

arrays, but that she learned how to construct an array from other officers, on the job. Both CST Mahoney and Detective Beazer said they were not familiar with the terms "blinded" or "double-blinded" suspect identification procedure.[6]

## LEGAL STANDARD

¶15    The Fourteenth Amendment to the United States Constitution states, in pertinent part, that "no state shall . . . deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. The due process clause is made applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act of 1954. *Richards v. People*, 53 V.I. 379, 384 n.2 (V.I. 2010) (citing The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. Code Ann. tit. 1)).

¶16    The V.I. Supreme Court has adopted a two-part test for reviewing out-of-court identifications for due process violations under the Fourteenth Amendment, originally articulated by the U.S. Supreme Court. *See Richards*, 53 V.I. at 384-87 (citing first *Stovall v. Denno*, 388 U.S. 293 (1967), then *Neil v. Biggers*, 409 U.S. 188 (1972), and *Manson v. Brathwaite*, 432 U.S. 98 (1977)). As *Richards v. People* states,

---

[6] "In this context, double-blind refers to a law enforcement procedure, such as a lineup or photo array, where the administrator does not know the lineup member or photograph in an array is the suspect, and neither does the witness. Single-blind refers to a law enforcement procedure where the administrator knows which individual or image is the suspect but the witness does not." *People of the Virgin Islands v. Mactavious*, 2021 VI Super 118U, ¶ 1 n.1 (citing Margaret Bull Kovera & Andrew J. Evelo, *The Case for Double-Blind Lineup Administration*, 23 PSYCH. PUB. POL AND L., 421, 422 (2017)).

"[f]irst, [the court] determines whether the identification procedure was unnecessarily suggestive, and, if so, [it] must decide whether the identification itself was nevertheless reliable." *Id.* at 387 (citing *Garcia v. Gov't*, 48 V.I. 530, 536 (D.V.I. App. Div. 2006)).

## ANALYSIS

### A. The Identification Procedure Was Not Unduly Suggestive

¶17    To determine whether an identification procedure was unduly suggestive, the Court must first assess whether it was "unnecessarily" or "impermissibly" suggestive, "which requires the Court to assess the degree of suggestiveness presented by the identification procedure actually used in this case, and whether the police had good reason not to use less suggestive procedures." *Potter v. People*, 56 V.I. 779, 789 (V.I. 2012) (citing first *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991), then *Richards*, 53 V.I. at 387). The "primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Richards*, 53 V.I. at 385 (citing *Biggers*, 409 U.S. at 190 (1972)).

### (i)    *The Procedure to Create the Photo Array, and the Photo Array Itself, Were Not Unduly Suggestive*

¶18    Berthier first contends that the photo array presented to Mr. Penn was impermissibly suggestive because the other individuals included in the array all had hair styles close to the head, while his braids stuck out from his head and he therefore "sticks out like a sore thumb." The People counter that the array was not

impermissibly suggestive, because Mr. Penn described the suspect as having his hair braided, and all of the individuals in the array have braided hair. The People further state that one of the individuals depicted (photo number five in the array) does not have his hair close to his head, as one of his braids is hanging down onto his forehead.

¶19    In *Richards*, the V.I. Supreme Court found that an identification was unduly suggestive when the witness's only description of a suspect was that he was a black male with spiky dreadlocks, and then presenting only one suspect with spiky dreadlocks to the witness for identification purposes. *Richards*, 53 V.I. at 389. The *Richards* court based its reasoning on several decisions from federal circuit courts, which held that an identification is unnecessarily suggestive when the defendant was the only person in the lineup or photo array with a salient feature from the witness's description. *See, e.g., Raheem v. Kelly*, 257, F.3d 122, 134 (2d Cir. 2001); *United States v. Clark*, 499 F.2d 889, 890 (6th Cir. 1974); and *United States v. Garcia-Alvarez*, 541 F.3d 8, 14 (1st Cir. 2008). However, in the instant matter, Mr. Penn described the suspect in greater detail, and VIPD presented Mr. Penn with six photos of potential suspects, each matching the description given by Mr. Penn: young man, with braided hair and light complexion, as well as CST Mahoney's addition of individuals with earrings. Even though Berthier's braids stuck out from his head in the photograph, that characteristic was not part of the description Mr. Penn provided to Detective Thomas during the investigation. In fact, Mr. Penn merely stated that the suspect had "braids". Because the description Mr. Penn gave to VIPD was more detailed than that given in the *Richards* case, and the photos selected for the photo

array each match the description Mr. Penn provided, the Court finds the instant case distinguishable from *Richards*. This Court finds that procedure used to create the photo array and the actual use of the photo array were not unduly suggestive.

### (ii) *The Presentation of the Photo Array Was Not Unduly Suggestive*

¶20 Berthier further contends that VIPD's presentation of the photo array to Mr. Penn was unduly suggestive because Detective Beazer, an officer directly involved in the investigation, asked Mr. Penn to "select the person who shot at you," insinuating that the suspect was in the array and thereby failing to present the array in either a blinded or double-blinded fashion. The People respond that because Mr. Penn had seen Berthier near his residence on numerous occasions and was already familiar with Berthier prior to the altercation, he could identify the defendant.

¶21 The use of a photo array may violate due process "when police attempt to emphasize the photograph of a given suspect, or when circumstances surrounding the array unduly suggest who an identifying witness should select." *United States v. Archibald*, No. 2015-0041, 2016 WL 1559516, at *4 (D.V.I. Apr. 14, 2016) (quoting *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003)). To determine the suggestiveness of a photo array, a court must "examine the totality of the circumstances to determine whether the array's suggestiveness denied the defendant due process." *Lawrence*, 349 F.3d at 115 (citing *Biggers*, 409 U.S. at 199). Specifically, a court considers "several factors, including the size of the array, its manner of presentation, and its contents." *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991). However, the First Circuit has held that when police do not use a double-blind

procedure, if a witness has prior familiarity with the suspect, no amount of police suggestion is likely to influence the witness's identification. *United States v. Veloz*, 109 F. Supp. 3d 305, 312 (D. Mass. 2015), *aff'd*, 948 F.3d 418 (1st Cir. 2020).

¶22    In the instant matter, Berthier's argument that VIPD's presentation of the photo array to Mr. Penn was unduly suggestive because VIPD told Mr. Penn to "select the person who shot at" him, is outweighed by Mr. Penn's familiarity with Berthier prior to the incident on October 16, 2019. Given Mr. Penn's extremely fast selection of Berthier from the photo array, the repeated statements that he was familiar with Berthier prior to the incident, and overall confidence in his selection of Berthier as the suspect, considering the totality of the circumstances, the Court finds that VIPD's indication that the suspect was included within the array presented does not ultimately render the identification procedure unduly suggestive. Therefore, the Court finds the procedures used by VIPD were not unduly suggestive and the Court will not suppress Mr. Penn's out-of-court identification of Berthier.

### (iii)    *VIPD's Lack of Written Standards Does Not Render its Practices Unduly Suggestive, Per Se*

¶23    This Court acknowledges that VIPD lacks up-to-date written standards and procedures for the construction and presentation of photo arrays. This lack of procedures does not adhere to the suggested best practices discussed within the DOJ Memorandum, admitted with reservations as Defendant's Exhibit M5. The Court notes that other defendants have made similar arguments in cases pending before the Superior Court of the Virgin Islands. *See People of the Virgin Islands v.*

*Mactavious*, 2021 VI Super 118U, ¶¶ 18-20 and *People of the Virgin Islands v. Dolphin*, 2021 VI Super 116U, ¶ 16. However, as other judicial officers of the Superior Court have held, the DOJ Memorandum does not bind this Court; the DOJ Memorandum explicitly states, "nothing in this memorandum implies that an identification not done in accordance with these procedures is unreliable or inadmissible in court." *Mactavious*, ¶ 19 (quoting Sally Q. Yates, U.S. DEP'T OF JUSTICE, OFFICE OF THE DEPUTY ATTORNEY GEN., MEMORANDUM ON EYEWITNESS IDENTIFICATION: PROCEDURES FOR CONDUCTING PHOTO ARRAYS (Jan. 6, 2017)). The District Court of the Virgin Islands has also heard the argument that VIPD's failure to adhere to "DOJ-sanctioned procedures renders the identification procedure impermissibly suggestive *per se*." *United States v. Mathias*, No. CR 2016-0035, 2017 WL 2434458, at *3 (D.V.I. June 5, 2017). The District Court responded that "there was no testimony suggesting the detectives administering the photo array engaged in any suggestive behavior," and that the witness identified the defendant instantly, and was "very confident in his selection," such that VIPD's failure to incorporate the practices recommended within the DOJ Memorandum did not render the identification unduly suggestive. *Id.* at ¶ 21 (citing *Mathias*, 2017 WL 2434458, at *5). Accordingly, given the circumstances of this case discussed at length above, this Court agrees with the holdings in *People of the Virgin Islands v. Mactavious*, *People of the Virgin Islands v. Dolphin*, and *People v. Mathias,* that the lack of photo array procedures does not *per se* render the identification process unduly suggestive, and therefore does not require suppression of Mr. Penn's identification.

### B. The Identification Was Reliable

¶24    The U.S. Supreme Court has noted that "courts should not reach the reliability inquiry unless the identification resulted from a situation created by improper police conduct." *United States v. Shavers*, 693 F.3d 363, 382 (3d Cir. 2012) (citing *Perry v. New Hampshire*, 565 U.S. 228, 245 (2012)). Nevertheless, the Court will briefly analyze the reliability of the identification.

¶25    When assessing reliability, the V.I. Supreme Court has adopted a totality of the circumstances test, originally articulated by the U.S. Supreme Court. *See Richards*, 53 V.I. at 386 (citing *Biggers*, 409 U.S. at 195). The purpose of the reliability test is to assess the likelihood of misidentification. *Id.* Reliability is the "linchpin in determining admissibility of identification testimony." *Id.* at 390-91 (quoting *Manson*, 432 U.S. at 114). The U.S. Supreme Court articulated the following factors, used to assess the totality of the circumstances:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Id.* (quoting *Biggers*, 409 U.S. at 199-200).

¶26    Berthier contends that because the incident occurred after sunset on October 16, 2019—citing Defendant's Exhibit M-4, which lists sunset dates and times from October 2019—and over two months elapsed between the incident and Mr. Penn's identification of Berthier from the photo array, the identification should be deemed unreliable. The People counter that (1) Mr. Penn had the opportunity to view the

defendant at the time of the incident, as the parties were in close proximity to one another; (2) Mr. Penn had previously seen the defendant on multiple occasions; (3) Mr. Penn accurately described the defendant at the time of his statement to Detective Thomas, and all of the individuals in the array matched that description; (4) Mr. Penn demonstrated great certainty at the identification, because he had seen the defendant previously; and (5) the time elapsed between the incident and the identification was not extended and Mr. Penn gave a detailed description of the defendant on the date of the incident, and he was familiar with the defendant because the defendant is his neighbor's nephew.

¶27 Considering the totality of the circumstances under the factors articulated, the Court largely agrees with the People that the identification was reliable. First, although the sun had set at the time of the incident, Detective Thomas testified that there was sufficient light emanating from nearby residences that visibility should not have been an issue for Mr. Penn. Additionally, there is no indication that Mr. Penn suffers from any impediment to his vision. Second, Mr. Penn was focused on parking his vehicle at his residence during the incident, and had already approached the vehicle blocking his path, therefore his attention was on the scenario at hand. He exited his vehicle to address the situation, and ultimately was shot at, at close range. It therefore follows that Mr. Penn was paying close attention to the events unfolding at the time of the incident. Third, very soon after the incident, Mr. Penn described the defendant to Detective Thomas, a description which fits Berthier. Fourth, Mr. Penn showed a great level of confidence in identifying the defendant as his assailant,

as it took him only two seconds to select Berthier from the photo array. Additionally, Mr. Penn stated he had previously seen Berthier around the neighborhood, visiting his uncle who lived in the area. Therefore, it follows that Mr. Penn was familiar with Berthier and could readily identify him from the photo array presented. Finally, the two-month period between the incident and the identification does not weigh strongly in the defendant's favor. Two months may be a significant period of time in some circumstances, but Mr. Penn was previously acquainted with the defendant, so it is less likely he struggled to accurately select his assailant. Given that Mr. Penn had previously interacted with Berthier and had seen him on repeated occasions in his neighborhood, the reliability is only minimally affected by this lapse in time.

¶28    Therefore, considering the totality of the circumstances, this Court finds Mr. Penn's selection of Berthier from the photo array to be reliable.

### C. In-Court Identifications Will Not Be Suppressed

¶29    Under the Fourteenth Amendment, pretrial and in-court identifications are governed by the same tests. *Richards*, 53 V.I. at 393. Therefore, because Mr. Penn's out-of-court, pretrial identification will not be suppressed under the relevant two-prong test for suggestiveness and reliability, the Court finds that future in-court identifications also will not be suppressed.

### D. Section 3 of the Revised Organic Act – Due Process Standard

¶30    Although the Court finds Mr. Penn's out-of-court identification of Berthier to be admissible under the Fourteenth Amendment, Berthier further asks the Court to suppress the identification under section 3 of the Revised Organic Act. Berthier

argues that several state courts have held that due process clauses in their respective state constitutions place a higher burden on the government than the U.S. Constitution for out-of-court identifications to be issued at trial. Berthier specifically relies upon a recent V.I. Supreme Court case which held, in part, that the equal protection and due process clauses of the Virgin Islands Bill of Rights, found in section 3 of the Revised Organic Act, have meaning independent from that of the Fourteenth Amendment. *Balboni v. Ranger Am. of the V.I.*, 70 V.I. 1048, 1092 (V.I. 2019). Therefore, Berthier argues, this Court should develop an alternative interpretation of the due process clause within the V.I. Bill of Rights, to be more expansive and provide further protections for suspects' due process rights within the out-of-court identification process. The People's opposition largely disregards this argument, merely stating in a footnote that Berthier's reliance on *Balboni v. Ranger American of the Virgin Islands* is misplaced as that case "addressed the constitutionality of the interpreting the state constitution's bill of rights" (sic).

¶31     Berthier does not cite to any precedent that "binds this Court to find that the Due Process clause of the Revised Organic Act of 1954 requires greater protection for defendants than those already laid out in *Richards*." *Dolphin*, at ¶ 17. Therefore, this Court declines to extend identification jurisprudence beyond what was established in *Richards*, absent guidance from the V.I. Supreme Court. *See id.*

## CONCLUSION

¶32    The Court finds that VIPD's procedures for identification in this matter were not unduly suggestive and were ultimately reliable.[7] Therefore, Berthier's motion to suppress the out-of-court identification of Berthier and the accompanying photo array will be denied. Under the relevant case law, it follows that the motion to suppress any future in-court identifications will also be denied.

An order consistent herewith will immediately follow.

DATED:    January **27**, 2022

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY:    _____
*for* **LATOYA CAMACHO**
Court Clerk Supervisor  01 / 27 / 22

---

[7] While the construction and presentation of the photo array ultimately satisfied the applicable legal test to deny suppression in this matter, the Court does encourage VIPD to adopt a standard written procedure for its officers and technicians to follow both for training processes and to prevent future violations of due process. *See Dolphin*, at, ¶ 16 (stating that "the development of, and adherence to, a written standard procedure for eyewitness photo identifications" aligned with the DOJ Memorandum "may go a long way to assuaging defense counsels that there was no undue suggestiveness by the VIPD, and may save VIPD and the People time and resources from having to appear in Court to justify their procedures the lack of a written guide does not make a procedure unduly suggestive").

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

January 27, 2022 02:05 PM
ST-2020-CR-00003
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. ST-2020-CR-00003 |
| vs. | ) | |
| | ) | |
| SHEKIL JAMAC BERTHIER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER

This matter is before the Court on Defendant's Motion to Suppress.

In accordance with the Memorandum Opinion entered on this day, it is hereby

**ORDERED** that Defendant's Motion to Suppress is **DENIED**; and it is further

**ORDERED** that a copy of this Order and the Memorandum Opinion shall be

served upon the Defendant and copies distributed to counsel of record.

DATED: January 27, 2022

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor  01 / 27 / 22